TRINETTE G. KENT (State Bar No. 025180)
KENT LAW OFFICES
10645 North Tatum Blvd., Suite 200-192
Phoenix, AZ 85028
Telephone:  (480) 247-9644
Facsimile:  (480) 717-4781
E-mail: tkent@kentlawpc.com

Of Counsel to:
Michigan Consumer Credit Lawyers
22142 West Nine Mile Road
Southfield, MI 48033
Telephone:  (248) 353-2882
Facsimile:  (248) 353-4840

*Attorneys for Plaintiff,*
*Nicholas Haffner*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Haffner, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Arizona Public Service, an Arizona corporation. | **JURY TRIAL DEMAND** |
| Defendant. | |

1

NOW COMES THE PLAINTIFF, NICHOLAS HAFFNER, BY AND THROUGH COUNSEL, TRINETTE G. KENT, and for his Complaint against the Defendant, pleads as follows:

## JURISDICTION

1. Jurisdiction of this court arises under 15 U.S.C. §1681p.

2. This is an action brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. §1681, *et seq*. [hereinafter "FCRA"]).

## VENUE

3. The transactions and occurrences which give rise to this action occurred in the City of Tempe, Maricopa County, Arizona.

4. Venue is proper in the District of Arizona, Phoenix Division.

## PARTIES

5. The Defendant to this lawsuit is:

   a. Arizona Public Service Company ("Arizona Public Service"), which is an Arizona corporation that maintains a registered agent in Maricopa County, Arizona.

## GENERAL ALLEGATIONS

6. This is an action under the federal Fair Credit Reporting Act ("FCRA") at 15 U.S.C. 1681, *et seq.*

*The Fair Credit reporting Act and its requirements*

7. The Defendant in this case is called a Furnisher in the credit reporting industry. A Furnisher is a creditor that furnishes its experience with the Plaintiff to the CRAs.

8. Credit reporting activities of both the CRAs and Furnishers are governed by the FCRA.

9. This case involves the Defendant's reporting charge offs, month after month "MCOs"), on the Plaintiff's consumer credit files.  The reporting of MCOs is inaccurate, incomplete, unclear, and in violation of the FCRA.

10. Charge offs are treated as an expense or loss to the creditor.  They are referenced in 15 U.S.C. § 1681c of the FCRA.  Under this paragraph, generally speaking, a charge off may not be reported on a trade line that is older than 7 years, beginning upon the expiration of the 180-day period measured from the delinquency which immediately preceded the charge off.  A charge off is a singular, one time event.  Indeed, the Federal Trade Commission has opined that it was Congress' intent in enacting sections 15 U.S.C. §1681c to establish a single date of the delinquency such as to begin the obsolescence period on charge offs.  Indeed, a plain reading of the statute shows as much.

11. In today's society, the ability to obtain credit largely determines one's lifestyle and housing options. A charge off is a derogatory piece of information that

depresses one's credit score and the reporting of which makes it difficult, if not impossible, for the Plaintiff to obtain credit.

*Defendant(s) are reporting MCOs*

12. In this case, the following Furnisher is reporting MCOs to the following CRAs on the Plaintiff's credit files:

   a. Arizona Public Service is reporting its trade line with MCOs to Equifax and Trans Union.

13. 15 U.S.C. 1692g requires CRAs, upon request, to clearly and accurately disclose all information in a consumer's file.

14. In the case before this court, the Defendant, by reporting MCOs, has failed to make the date of the charge off clear to the Plaintiff and others, including credit grantors. Again, a charge off occurs on a singular date. Without the ability to understand this date from the trade line, it is impossible for the Plaintiff to determine the date that the negative trade line should be removed from the Plaintiff's credit report.

15. The information that the Defendant is providing in its trade lines is neither clear nor accurate for the following reasons:

   a. Because the Status section of the trade line for each Furnisher reports the account status as "charge off" and the payment history grid of these trade lines also reports charge offs, month after month, it appears that each Furnisher is charging off the account again, month after month. There is

4

no legitimate reason for reporting the account as a charge off month after month in the payment history section and in the Status section. It is confusing, unclear, and inaccurate to anyone who receives the Plaintiff's credit report.

b. The Defendant Furnisher's trade line offers the Plaintiff no way to verify when the trade line will be removed from his credit report. Plaintiff has no way predict his financial future because these MCO trade line is an impediment to the Plaintiff seeking new credit and do not give Plaintiff enough information to predict when they will fall off.

c. The MCOs are confusing or are potentially unclear to judgment lenders such as mortgage lenders and their underwriters. These sorts of lenders look beyond the simple credit score to judge whether a consumer meets the guidelines for a mortgage loan. They review each trade line for content. MCOs are confusing, or potentially confusing to such mortgage lenders. There is no legitimate business reason for the Defendant to report charge offs, month after month, in a payment grid section of a consumer's credit file when the account has already been tagged in the Status section as a charge off.

16. On or about February 18, 2016, Mr. Haffner obtained his Equifax and Trans Union credit files which showed that Arizona Public Service reported multiple charge offs on its Errant Trade Line.

17. On or about March 21, 2016, Mr. Haffner submitted letters to Equifax and Trans Union, disputing the multiple charge offs on the Errant Trade Line.

18. Upon information and belief, Equifax and Trans Union forwarded Mr. Haffner's consumer dispute to Arizona Public Service.

19. On or about May 20, 2016, Mr. Haffner obtained his Equifax and Trans Union credit files, which showed that Arizona Public Service retained the multiple charge offs on the Errant Trade Line.

20. Defendant, it appears, does not have firm policies or procedures in place to prevent the reporting of MCOs or to manage its reporting at all.

21. Since the Defendant lacks policies and procedures to refrain from reporting MCOs, it is reporting trade lines to credit reports regarding the Plaintiff without having adequate policies and procedures in place to assure maximum possible accuracy as required by the FCRA at 15 U.S.C. 1681e(b).  Lacking such policies and procedures, the defendant is causing great financial and credit damage to the consumer and possibly, for a far longer period than they may legally report.   By holding the Plaintiff's credit score under water month after month for an indeterminate time, the Plaintiff's ability to obtain goods, services

and credit at reasonable rates, is obliterated. This practice of reporting MCOs is illegal and violated the FCRA.

22. Upon information and belief, the Defendant favors this MCO policy. Credit reporting is a debt collection activity. The longer that the Defendant can illegally continue to report MCOs on the Plaintiff's credit report, the longer it can artificially depress the Plaintiff's credit score. The Defendant's apparent goal is to continue holding the Plaintiff's credit score under water for as long as possible, hoping that at some point the Plaintiff will come up gasping for air when he/she has an absolute need for an improved score. When that day comes, the Defendant will hope to get paid.

23. This pattern and practice by the Defendant of reporting MCOs constitutes a willful, or at the very least negligent, violation of the Plaintiff's rights under the FCRA.

24. The damages caused by the reporting of multiple charge offs include angst and emotional distress, financial damage, credit damage, costs, and attorneys' fees.

## COUNT I

### WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY ARIZONA PUBLIC SERVICE

25. Plaintiff realleges the above paragraphs as if recited verbatim.

26. After being informed by Equifax and Trans Union that Plaintiff disputed the accuracy of the MCOs, Arizona Public Service willfully failed to conduct a proper investigation of Plaintiff's dispute.

27. Indeed, Arizona Public Service was fully aware or should have been aware that its reporting of MCOs in its trade line on the Plaintiff's consumer credit file with Equifax and Trans Union was not only inaccurate, but was illegal. Arizona Public Service was also fully aware that it was improperly depressing the Plaintiff's credit score, causing great credit harm and damage to his ability to obtain credit.

28. Had Arizona Public Service conducted a reasonable reinvestigation, it would have known that there was no reason for it to report its trade line as a charge off in both the payment history grid and the status section of the Plaintiff's credit report.

29. Arizona Public Service willfully retained the MCOs making its trade line inaccurate, incomplete, and/or unclear.

30. By retaining the MCOs and directing Equifax and Trans Union to do the same, Arizona Public Service willfully violated its duties under the FCRA, causing economic and emotional damages to the Plaintiff.

31. Arizona Public Service is liable to Plaintiff for the greater of statutory damages or actual damages sustained by reason its violations of the FCRA in an amount

to be determined by the trier fact, together with an award of punitive damages in the amount to be determined by the trier of fact. Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Arizona Public Service for the greater of statutory of $1,000 or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## COUNT II

### NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY ARIZONA PUBLIC SERVICE

32. Plaintiff realleges the above paragraphs as if recited verbatim.

33. In the alternative to a willful violation of the FCRA, Plaintiff claims that Arizona Public Service negligently violated his rights under this statute.

34. After being informed by Equifax and Trans Union of Plaintiff's objection to the Defendant's reporting of MCOs, Arizona Public Service negligently failed to conduct a proper investigation of Plaintiff's dispute as required by 15 USC 1681s-2(b) and to report the results of that investigation to Equifax and Trans Union

35. Arizona Public Service negligently failed to review all relevant information available to it and provided by Equifax and Trans Union in conducting its reinvestigation as required by 15 USC 1681s-2(b). Alternatively, Arizona

Public Service negligently failed to conduct a reasonable reinvestigation and failed to report the results of a reasonable reinvestigation to Equifax and Trans Union. Specifically, it failed to direct Equifax and Trans Union to remove the MCOs from its trade line.

36. As a direct and proximate cause of Arizona Public Service's negligent failure to perform its duties under the FCRA, Plaintiff has suffered credit and financial damages, mental anguish, suffering, humiliation, and embarrassment.

37. Arizona Public Service is liable to Plaintiff by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Arizona Public Service for the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorneys' fees.

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

DATED: September 23, 2016

                                       KENT LAW OFFICES

                                       By: */s/ Trinette G. Kent*
                                          Trinette G. Kent
                                          Attorneys for Plaintiff,
                                          Nicholas Haffner